**RECEIVED**

**DEC 12 2022**

**BY MAIL**

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

Larry E. Windeknecht

      Petitioner      Case NO. _____

          v             Verified & Certified

Denise Hacker           pursuant to 28 USC. & 1746

Chief Operating Officer

    etal. Respondents

## PETITION FOR WRIT OF HABEAS CORPUS:

### PARTIES:

1. Petitioner Larry E. Windeknecht, is currently confined by Respondent Denise Hacker at the Sorts Facility 1016 West Columbia Street, Farmington, Missouri, 63640.

2. Respondent Hacker is the Chief Operations Officer (C.O.O.) of that facility and asserts her Authority to continue Larry E. Windeknecht, Petitioner's detention is the Sexually Violent Predator SVP Statute, 632.480 RSMo. Hacker's address is Sorts 1010 West Columbia Street, Farmington Missouri, 63640.

### JURISDICTION AND VENUE:

3. Pursuant to 28 USC. & 2241 and 28 USC. & 2254 petitioner. Larry E. Windeknecht comes forth as a prose litigant

1.

and respectfully petitions the court for a writ of Habeas
Corpus, and by this petition sets forth the following facts
and causes for the issuance, and show cause order of
said Writ.

4. Rule 1.(a).(1) A person in custody under a State Court
Judgment who seeks a determination that the custody
violates the Constitution, laws, or treaties of the United
States.

5. Under § 2254 (b),(1),-(b)(ii) Circumstances exist that render
such process ineffective to protect the rights of the applicant
Petitioner cannot submit this pleading to a lower court as they
do not have the Authority to Interpret federal treaties.

## GROUNDS FOR RELIEF:

6. On April 4/25/18 in State V Larry E. Windeknecht after being
found Guilty by a Jury, Judge Stephan R. Mitchell, 1 22 126
of the Thirty-Second 32th Judicial Circuit Court Probate Division
sentenced Larry E. Windeknecht, Petitioner to an indefinite
(Life Sentence) in the Maximum Security Dept. of Mental
Heath Correctional Center in Farmington Missouri 63640. See:
Exhibit. A. Minute Book H.B. Bill. 1405.

2.

7. The Missouri Sexual Violent Predator law. §632.480 RSMo.
Violates Petitioner's Rights in accordance with the Universal
Declaration of Human Rights, and Petioner's Constitutional
Right to be Free of Cruel and Unusual Punishment. See Exhibits
(B.) (C.) the diagnosis used to commit Petitioner as Violent Predator.

8. Petitioner plead to a (7) Seven-year sentence in 2010.) Petitioner
has now completed more than (5) years in confinement under the
S.V.P. Statute, This being a heavier penalty than the Original
Penalty imposed for the offense Petitioner committed. See: Attached
Supplemental pages marked (9-13.) (Grounds for Relief), (Attached)

## SUPPORTING FACTS :

14. In 1997, the Supreme Court of the United States of America heard
a case on the constitutionality of the controversial Sexual Predator
law. (Kansas V Hendricks, June 23,AD 1997, NO: 95-1649 521.U.S.
346).

"If the object or purpose of a Civil Commitment Law is to provide
treatment, but the treatment provisions were adopted as a Sham
or mere pretext such a scheme would indicate the forbidden purpose
to punish". See, Hendricks, 521 U.S. at 371.

Subsequently, the court ruled the States could Author, and Enforce
Laws of this Nature. Many States have done this, and successfully

imprisoned thousands of U.S. citizens under the Supreme Court Authority. That Authority was, and is still in Violation of a Treatly, and the terms of that treaty the United States of America agreed upon, along with many other civilized countries.

In 1948, The United States of America signed the Universal Declaration of Human Rights, Articles one through thirty. The pertinent Articles read as such.

   Article 11. Subsection 2 states: No one shall be held guilty of any penal offense on account of any act or omission which did not constitute a penal offense, under National or International law, at the time it was committed. Nor shall a heavier Penalty be imposed than the one that was applicable at the time the penal offense was committed.

Article 30. States Nothing in this Declaration may be interpreted as implying for any State, Group or person any right to engage in any activity or to perform any act aimed at the destruction of any rights and freedoms set forth herein.

Missouri, as many other states that have crafted a sexually violent predator / sexually violent person law, have used the defense that the continued imprisoment is a collateral consequence, not.

4.

further punishment, to enforce their individual laws as written.

In (Morales V State, 104 SW. 3d. 431 Mo App. ED. 2003), and (Seates V State, NO: 25545, 134. SW. 3d. 738 MO. APP. ED. 2004) The Southern and Eastern State Courts of Appeals reasoned the continued confinement of people targeted by the State of Missouri's Attorney General's office as possiable Sexual Violent Predators were not being punished, but confined in a state of Civil Detention as a Collateral Consequence. As the Eastern District Court has ruled in (Carter V Larkins, 2009 U.S. Dist. Lexis 87296 ED. MO. September 23 RD. 2009).

In accordance with the legal terms and definitions of the United States Supreme Court Black's Legal Dictionary defines (collarteral consequence) as: A penalty for committing a crime, in addition to the penalties included in the criminal sentence.

Being forcefully and involuntarily sentenced to the indefinite confinement / incarceration inside a Sexual Violent Predator Center is without a doubt, a heavier penalty than the Original Criminal Sentence.

The state claims that the 632.480 SVP Law is not punishment,

, but a collateral consequence. If the court looks at the words used to craft Missouri's SVP Scheme it is clear the true intention, and purpose was to inflict a continuous penalty to the targeted citizen such as Petitioner.

No matter how one analyzes the issue at hand, the state created a "Legal" institution of indefinite incarceration which is based on nothing but deceitful verbiage. The State claims the SVP law is not punishment, but a collateral consequence, only collateral consequence is a penalty, penalty is described as a punishment, and punishment is punitive. The law starts with punishment, and ends with punishment, no matter which way the state strings the words together.

The State created the term Sexually Violent Predator by claiming that anyone with a Sex offense is violent, because all sex crimes are emotionally violent to the victim, there by creating the idea Petitioner is Sexually Violent. Next the State creates a greater, even more threatening terminology by claiming the targeted person to be a sexually violent predator under the reasoning he may commit another Sex Offense.

The State continues to violate Petitioner's Rights by disguising their intentions in a string of words, which are very clear in their intent.

Collateral Consequence : A penalty for committing a crime, or offense, in addition to the penalities included in the criminal sentence.

Penalty : A punishment established by law or Authority for a crime or offense. 2 The disadvantage or painful consequences resulting from an action or condition.

Punishment: To subject (someone) to a penalty for a crime, fault, or bad behavior. 2. To inflict a penalty on a wrongdoer for (an offense) 3. To handle harshly: Injure.

Injure : To cause physical harm to: Hurt 2 To cause damage to: Impair. 3. To cause distress to Wound: 4. To commit an injustice or offense against wrong.

Punitive : To punish, inflicting or aiming to inflict punishment.

Amendment (8) Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. (If a person is convicted of a crime, the government can not impose unreasonable fines or inflict inhumane punishments).

Knowingly doing this, and then continuing to do this to Petitioner is the same emotional torture as the State claimed was predatory

7.

when petitioner violated another humans / U.S. citizen's life and boundaries. As the U.S. Supreme Court has ruled, and upheld "a person convicted of a crime and sent to prison is not to be punished any further, as the prison sentence was the punishment".

The Universal Declaration of Human Rights was signed into law many years before the Sexual Violent Predator Law or Legislation was thought of. whether or not this was an oversight by the superior justices or the State Justices, at times when the matter has been before them or outright left in the Legal Shadows on purpose is not the issue. The continued detention and restraint against Petitioner's Freedoms, and Liberty is unlawful, cruel and unusual, injurious punishment and now known by the court.

### RELIEF REQUESTED:

15, For the court to issue an Order to the Respondent or the State of Missouri's Attorney General's Office, to Release Petitioner Larry E. Windeknecht from his current detention.

Wherefore Petitioner Larry E. Windeknecht prays the court will issue this Writ of Habeas Corpus, and Grant the Relief sought or any Relief the Court deems just and fair in accordance

8.

With the U.S. Constitution, Law treaties, and powers
entrusted in them.

Respectfully Submitted

Larry E. Windelknecht

Signature

phone 573-218-7094

Mr. Larry E. Windelknecht

1016 . W. Columbia Street

date 12/5/2022

Farmington, Missouri. 63640

Verified & Certified

pursuant to 28 U.S.C. § 1746

9.

Supplement to page Two paragraph 6-8 (pages 9-13).

## GROUNDS FOR RELIEF

9.   (a.) Petitioner has challenged the Legality of his
Civil Commitment Confinement in the Circuit Court
of St. Francois County (which is pursuant to this
States Sexual Violent Predator Laws SVPA & § 632.480
to 632.513 RSMo.) in that petitioner is being denied
Due Process, and Equal Protection of the Law in violation
of the Fifth and Fourteenth Amendments of the United
States Constitution as well as Missouri Constitution
Article 1 & 10 when State V Grado, 559.5W.3d.888,
892 (Mo.banc. 2018) Establishes there is no State
Corrective Process for Post Commitment Claim involving
Ineffective Assistance of Counsel Claims involving ineffective
refusal to file, any pre-trial Motion's, and the current
State Habeas Corpus Remedy under MO.S.Ct.R.91 is
not an Adequate State Process when it forecloses and
suspends the Writ of Habeas Corpus altogether without Remedy.
   (b.) Petitioner was convicted under the SVP Act the State
prosecutor lacked Jurisdiction in the usage of closed
records for laying what he referred to as a foundation
to potential Jurors during Voir-Dire to mislead, and
misinform these Jurors, Counsels failure to object
in violation of the "confrontational Clause" The Sixth
Amendment of the United States Constitution's counter
part in the Constitution of Missouri 1945 provides that

(9-13.)

in criminal prosecutions the accused shall have the right to appear, and defend in person, and by counsel to meet the witnesses against him face to face Mo. Const. Art. 1 & 18(a). The Sixth Amendment is applicable to all criminal proceedings in the State Courts by reason of the application of the Fourteenth Amendment of the Constitution of the United States prohibiting the deprivation of life or liberty without Due Process of Law. Of these Guarantees the primary interest secured by the "Confrontational Clause", is the right to "cross examination".

(c.) It would be contrary to Due-Process MO. Const. Art. 1 & 10 Equal Rights under the Law MO. Const. Art. 1 & 2. , and the provisions of Mo. Const. Art. 1 & & 18 (a) and (b) for Missouri Courts to afford accused persons in Missouri less constitutionally protected confrontational rights where out of State witnesses are deposed as opposed to in-state witnesses, and where the depostion testimony against the accused is presented at trial against the accused. Indeed the Sixth Amendment would prohibit such a practice.

(d.) Clay V Dormire 37. SW. 3d. 214, 217 (Mo. banc. 2000) three 3 Habeas Avenues (excess jurisdiction, actual innocence. ,and Miscarriage of Justice.), does not include Habeas Relief for Civilly Committed Citizens, amounting also to a

10.

Suspension of the Writ of Habeas Corpus in Violation of
the United States Constitution Article 1 & 9 CL. 2. See also
Art. 1, Section 12 of the MO. Const., and Art. V Section 4. "NO Remedy".

(e.)          GROUNDS CAUSE AND PREJUDICE:

See: Martinez V Ryan 566. U.S. 1, Shinn V Ramirez 142 S. Ct. 1718
HN 12, HN. 13, and HN 14. In Martinez the United States Supreme
Court recognised a narrow exception to the rule that Attorney
error can not establish cause to excuse a procedural default
unless it violates the Constitution Ineffective Assistance of
State - Post - Conviction Counsel may constitute cause to forgive
procedural default of a trial ineffective assistance claim,
but only if the states Judical System effectively fore closes
direct review of trial-ineffective assistance claims. Other wise.
Attorney error where there is no right to counsel remains
insufficient to show cause. To over come procedural default
in such cases a prisoner must demonstrate "cause" to excuse
the procedural defect "Actual Prejudice". See Coleman V
Thompson 501 US. 722, 750. 111 S. Ct. 2546, 115 L. Ed. 2d.
640. This petitioner has in fact done this showed "Actual
Prejudice". throughout Trial proceedings, records.


(e.)          ARGUMENT:

For claims based on what happened at trial, it is consistent
with the approach taken in States such as Maine and Illinois
to allow the Ineffective claim to be determined on Appeal

11.

See: eg. In re Henry B. 159, A.3d. at 827-28 (Citation ommitted) (HN6)(A)[*14] direct appeal from an Order of Involuntary Commitment may included a claim that the individuals Attorney provided ineffective assistance of Counsel when the Record is sufficiently well developed to permit a fair evaluation of the claim.) Matter of Carmody, 274 Ill. APP. 3d. 46, 653 N.E. 2d. 977-985, 210. Ill. Dec. 782 (Ill APP. 1995) (in involuntary commitment proceedings no issues are likely to arise reguarding respondents counsels failure to adequately investigate or prepare for trial or counsels failure to persue defense witnesses). Kansas also permits a person "detained under KSVPA may raise an ineffective assistance of trial counsel claim on Direct Appeal" Ontiberos, 287. p. 3d. at 866. Petitioners continued Arguments are External to and Seperable from any possiable defense raisable during the commitment process. Not only is the current Missouri SVP. Act in conflict with Missouri's closed records Statute VAMS §§ 610.100-610.120.1, but also Federal Statute, 5.USC. § 552 (b)(4).(C). and its in conflict with the States Judicial System it effectively fore closes direct review of trial-ineffective-assistance claims which in turn suspends the writ of Habeas Corpus in violation of the Constitutions Suspension Clause. Art.1 9. CL2 which provides that the privilege of the writ of Habeas Corpus shall not be Suspended unless in cases of rebellion or respect to denial of accused Original Petition. These are Federal Questions (28 USC. 1331)(a) The District Courts Shall have Original Jurisdiction of all Civil Actions arising under the Constitution.

Laws or Treaties of the United States, The violation
of this Petitioner's Civil & Constitutional Rights is very
clear in the filing of 2 Seperate Habeas Corpus Actions.
in St. Francois County, located in Farmington, Missouri, 63640
Case NO. 19SF-CC000188, and Case NO. 22SF-CC00063.

Respectfully Submitted

Samy E. Windelenecht

Verified & Certified                      Signature

pursuant to 28 USC § 1746            Mr. Larry E. Windeknecht

date 12/5/2022                          1016. W. Columbia Street

phone 573 218-7094                   Farmington Missouri, 63640

13.

PAGE #: 1
BILL #: HB 1405

Exhibit (A)

| Committee: CIVIL AND ADMINISTRATIVE LAW | Chairman: REP. PHILIP SMITH |
|---|---|
| Date Received: Feb. 2, 98 | Date Notice Given: Feb. 12, 98 |
| Date Hearing Held: Feb. 18, 98 | Location: HRM 1 & 2 |

---

**WITNESS FOR:** (Additional Room–Back Page)

| NAME: | ORGANZATION: |
|---|---|
| Rep. Hosmer, Rep. Gaw, Rep. Crump et al | Dist. 138, Dist. 22, Dist. 152 |
| Brad Ketcher | Governor's Office |
| Dora Schriro | Director, Dept of Corrections |
| Dorn Schuffman | MO Dept of Mental Health |

**WITNESS AGAINST:** (Additional Room–Back Page)

| NAME: | ORGANZATION: |
|---|---|
| Thomas D. Carver | MO Assn of Criminal Defense Lawyers |

---

DATE BILL CONSIDERED: (Executive Session)  3-4-98

DATE NOTICE GIVEN:  2-26-98
3-3-98 Amended

DATE FINAL COMMITTEE ACTION TAKEN:  3-4-98

1. Attach copies of amendments offered, roll call sheets for each.
2. Record motions made and the disposition of each.
3. Attach roll call sheets recording final committee action.
4. Attach any testimony available from witness, sponsors, members, or staff or indicate where available for review.
5. Attach witness forms.

**COMMENTS:**

Provides for Civil Commitment of Sexual Predators. This bill is to restructure legislation signed into law in

1996, for previous sex offenders, who sentences are about to be served & released who are yet considered violent offenders to be evaluated before their release, by a panel of mental health personnel & assessed, they will be directed to programs, & continued probation on their behaviorial status, & if the panel decides they are violent sexual offenders, their will be a civil commitment to never be set free to repeat this offense.

Heard bill in a panel setting with Sponors for the following sexual predator bills: ( HB 1405, Hosmer-Gaw-Crump),(1109,Ross),( 1335,Alter). Hearing Concluded.

3-4-98 In Executive Session, a motion by Rep. Parker & seconded by Rep. Barry to DO PASS

HCS HB 1405, 1109, 1335, In a rollcall vote of (17 For), HCS DO PASS.

3-25-98 Turned in HCS 1405-1109-1335 to Ast Chief Clerk. Handler = P. Smith

Case: 4:22-cv-01325-SRW   Doc. #:  1   Filed: 12/12/22   Page: 16 of 23 PageID #: 16

Exhibit (B.)

# LOST IN LITTLEFIELD

# Hypocrisy in Sexually Violent Predator Expert Testimony

👤 **moosejaw72**   🕐 **June 11, 2021**   📁 **News**

### PSYCHOLOGY TODAY: by Allen J Frances M.D.; Posted January 26, 2015

*Rape is crime not mental disorder and must be distinguished from Sexual Sadism*

The United States Constitution does not allow 'preventive detention'- a much abused 18th century prerogative of royal power that was abhorrent to our founding fathers. We are meant to be a country of law, not arbitrary state power. No imprisonment on suspicion that someone might commit a **crime** and no keeping someone in prison beyond his allotted sentence just because someone thinks he might still be dangerous

Sexually Violent Predator laws in 20 states are an exception. Indefinite preventive detention in a psychiatric facility (really a prison in all but name) is permitted if the individual has committed a violent sexual crime and has a mental disorder that predisposes to its repetition. The US Supreme Court in a narrow 5-4 decision found this to be constitutional, but explicitly only if the perpetrator has a definite mental disorder that would distinguish him from the much more common opportunistic criminal rapist. No mental disorder, no preventive detention.

In an attempt to facilitate preventive detention under SVP commitment statutes, many state evaluators blatently misused the inherently unreliable Paraphilia Not Otherwise Specified as a qualifying diagnosis in cases that involved no more than typical, opportunistic rape. Until recently, juries bought it- unjustly committing common criminals to inappropriate psychiatric incarcerations.

7/2/2021

This is now changing, especially since DSM 5 confirmed once again that rape is not a mental disorder (this is the fourth time DSM has rejected rape in 40 years). Paraphilia NOS is now widely recognized for the fake diagnosis it always was.

This should be the end of a sad epoch of incompetent expert testimony in SVP cases- but it isn't. Undeterred by any respect for proper diagnostic practice, many state evaluators have come up with a new fake diagnosis, intended to convert ineligible common criminality into SVP-ready mental disorder. The same patients who before were routinely mislabeled Paraphilia NOS are now being mislabeled as Sexual Sadists.

Unlike rape, Sexual Sadism is an official DSM 5 diagnosis and, if properly diagnosed, is a legitimate qualifying mental disorder in SVP cases. Unfortunately, incompetent evaluators are now confusing the very specialized violence of sadism from the nonspecific violence of rape. The diagnosis of Sexual Sadism applies only to a tiny minority of rapists.

Rapists and sadists both are violent toward their victims- but with quite different motivations. The goal of the rapist's violence is to rapidly and thoroughly control the victim to ensure her compliance with the sexual acts. For the vast majority of rapists, violence and control are no more than tools to force a non-consenting person to have sex. By definition, rape is nonconsensual sex that would only occur under conditions of overt or threatened violence.

In contrast, the sadist has a much more specific motivation. His stereotyped (and often diabolical) violence and demeaning control are the main event of the sex act- fulfilling deeply held and "recurrent, intense sexually arousing fantasies and sexual urges". For the sadist, sex would not be nearly so exciting (and might not even be possible at all) if it is not accompanied by violence that elicits the victim's pain, humiliation, and suffering.

Rapists and sadists are both routinely cruel, unempathic, and show lack of concern regarding the impact of their attack on the victim- but again for different reasons. For the sadist, the sexual excitement is enhanced by, or may exclusively reside in, being cruel in a way that elicits pain. For the rapist the pain inflicted is incidental, perhaps indifferent collateral damage, not the goal of the sex act. The rapist and the sadist both lack a conscience to inhibit hurting others, but only the sadist requires their pain as a sexual stimulant.

Rape is a always heinous, ugly, violent, and cruel. But the violence and cruelty that are part of all rapes should not be confused with the motivated violence and cruelty of Sexual Sadism that requires victim pain to generate excitement. Rape is a crime, not a mental disorder. Sexual Sadism is both.



If this distinction is not thought through, made carefully, and supported with strong confirmatory evidence, virtually all rapists could conceivably receive a mistaken mental disorder diagnosis of Sexual Sadism and would then be subject to SVP commitment on that fallacious basis. This makes no sense and flies in the face of the Supreme Court rulings, which accepted the constitutionality of SVP statutes only if the rape is the result of a predisposing mental disorder that can be reliably distinguished from common criminality. Most coercive sex is explained not by Sexual Sadism and should not be mislabeled as such.

The differences between rape and sadism are clear. In rape, the purpose of violence is instrumental- to facilitate the victim's compliance with the sex act. In Sexual Sadism, the violence, cruelty, and gratification in the victim's suffering are all primary- necessary preconditions for sexual arousal and for the fulfillment of the urgent, intense, and recurrent sadistic fantasies of inflicting harm and humiliation.

Of course there will be the occasional rapist who also fills criteria for Sexual Sadism and is suitable for SVP commitment, but this will be a rare finding among rapists and should require extensive supporting evidence. Sexual Sadism should not be used loosely to shoehorn common criminal rapists into a mental disorder category in order to justify a psychiatric preventative detention that would otherwise be unconstitutional.

I have no sympathy for rapists and think they deserve long prison sentences meted out by the criminal justice system. But I have even less sympathy for the misuse of psychiatric testimony in the courtroom, for evaluators who play loose with proper diagnostic practice, and with the misuse of psychiatric incarceration. Railroading people inappropriately into psychiatric hospitals is a slippery slope that can lead to grave violation of human rights and a distortion of our most precious constitutional protections.

**Share this:**

🐦 Twitter | 🟦 Facebook

Like

Be the first to like this.

Exhibit (C.)

*Excerpts from my Report to the Virginia State Crime Commission relevant to your inquiries re alleged disorders and their alleged connection to sexual recidivism*

> *a. The Junk Science Concept of Rape as Comprising Unspecified Paraphilic Disorder, Nonconsent as a Disorder*

*Thomas K. Zander*, "Civil Commitment without Psychosis: The Law's Reliance on the Weakest Links in Psychodiagnosis," 1 *Jour. of Sexual Offender Civil Commitment: Science and the Law* 17, at 45 [2005]), after an exhaustive examination of the development of the DSM in its sequential editions, flatly concludes that "the weight of opinion among experts in the treatment of paraphilias is that the omission of non-sadistic rape from the paraphilias category of the DSM was, and continues to be deliberate decision of the American Psychiatric Association. None of the experts has published a statement supporting the use of the diagnosis of paraphilia-NOS for rapists."

One of the actual editors of the DSM, *Allen Frances*, *The Essentials of Psychiatric Diagnosis*, in the section discussing "Paraphilic Disorders" (pp. 169-74, declares flatly that rape is a crime, not a mental disorder. He states that the claimed diagnostic category of "Unspecified Paraphilic Disorder, Nonconsent" is an utterly unreliable diagnosis. Rape has been rejected as a mental disorder in all editions of the DSM since DSM-3. *Frances* states that rape is almost always an opportunistic behavior that reflects simple criminality – not a mental disorder. He adds that Unspecified Paraphilic Disorder, Nonconsent has been carelessly, unreliably, and incorrectly diagnosed in forensic proceedings in countless cases as a convenient way to promote inappropriate psychiatric preventive detention… This, *Frances* insists, is a misuse of psychiatric diagnosis and an abuse of involuntary psychiatric commitment. He concludes that a claimed diagnosis of Unspecified Paraphilic Disorder, Nonconsent, should not be taken seriously when presented in expert testimony. To same effect, see: *A. Frances*, "Going for Wins in Sexually Violent Predator Cases," *Psychiatric Times*, July 8, 2011, available at www.psychiatrictimes.com/blog/cpuchincrisis/content/article/10168/1900563.

### b.   The Junk Science Concept of "Antisocial Personality Disorder" as a Disorder.

*Jeffrey Abracen & Jan Looman*, "Evaluation of Civil Commitment Criteria in a High Risk Sample of Sexual Offenders," 1 *Jour. of Sexual Offender Commitment: Science and the Law*, 124-140 (2006), at p. 125, bluntly state: "…[T]he term personality disorder is left completely undefined in the majority of States whose commitment criteria discuss these disorders."

As *Deirdre M. Smith*, "Dangerous Diagnoses, Risky Assumptions, and the Failed Experiment of 'Sexually Violent Predator' Commitment," 67 *Oklahoma Law Rev.* 619, 677 (No. 4, Summer 2015, states, "…ASPD is a diagnosis that, by definition, could apply to most people incarcerated in the United States."

*Eric Janus*, in *Failure to Protect*, p. 36, relays this basic truth as to the ubiquity of so-called "antisocial personality disorder" among criminals:   "As one author put it, 'Applying the diagnosis antisocial personality to imprisoned offenders [is like] looking for hay in a hay stack.'" [citing: *Gail F. Stevens*, "Applying the Diagnosis Antisocial Personality to Imprisoned Offenders: Looking for Hay in a Haystack," 19 *Jour. of Offender Rehabilitation* 1-26 (1993)]

*Zander, supra*, at pp. 51-52, explains the problem thus:

"Among psychologists and psychiatrists, the personality disorders may be the single most controversial diagnostic category in the DSM.   For example, in a survey of 146 psychologists and psychiatrists in 42 countries, *Maser, Kaelber, and Weise* (1991) asked respondents to rate their satisfaction with the DSM diagnostic categories. 'The personality disorders led the list of diagnostic categories with which respondents were dissatisfied' (p. 273, with 56% expressing dissatisfaction;…. One of the primary reasons for the controversial nature of the personality disorders has to do with the fact that, contrary to the DSM-IV-TR's claim that personality disorders 'are qualitatively distinct syndromes,' they appear instead to 'represent maladaptive variants of personality traits that merge imperceptibly into normality and into one another' (APA, [DSM-IV] p. 686)….

"Because personality disorders categorize behavior that differs from normal behavior only by its degree of expression of universal traits, rather than qualitative behavioral differences, the conceptual validity of these categories is inherently suspect. …[P]ersonality disorder diagnoses are much more likely to be conceptually invalid, because their behavioral manifestations are exhibited by many people considered to be normal.

"'The most fundamental question concerning antisocial personality disorder is whether it should be considered a mental disorder and be included in the DSM-IV. *(Francis & Ross*, 2001, p. 293) .  Francis was the chair of the APA's Task Force on DSM-IV.

"The over-inclusiveness of the diagnosis of antisocial personality disorder apparently was a major concern of the U.S. Supreme Court justices deciding *Kansas v. Crane* (2002).  When

the U.S. Supreme Court justices were considering the oral arguments of the two lawyers who litigated the *Crane* case before the Court, Justice Ginsburg expressed concern about the large number of people who would appear to qualify for the DSM-IV-TR definition of antisocial personality disorder, observing, '…they say pick three out of a list of seven, you could pick out habitually doesn't work, doesn't pay debts, is reckless, irritable …There are a lot of ordinary people who would fit that description' *Kansas v. Crane* Oral Argument, 2001, pp. 8-9) [italic supplied by *Zander*]. Later in the oral argument, Justice O'Connor pointed out that a prosecution expert in the trial of the case had testified that 75% of the male prison population in the U.S. was diagnosable with antisocial personality disorder (p. 15). When the Kansas Attorney General acknowledged that a sex offender satisfying the criteria for antisocial personality disorder could be committed as an SVP, another justice, apparently astonished by how easily this diagnosis could result in civil commitment, simply responded, 'Wow' (p. 15). In the majority decision in *Crane*, the Court favorably cited research showing that 40 to 60% of the male prison population in the U.S. is diagnosable with antisocial personality disorder (*Kansas v. Crane*, 2002, p. 412).

"Thus, some of the justices on the U.S. Supreme Court had strong concerns about the conceptual validity of the diagnosis of antisocial personality disorder as it could be applied in SVP commitment cases. This should not have been surprising considering that, just 10 years earlier in *Foucha v. Louisiana* (1992), the Court had held that a diagnosis of antisocial personality disorder was an insufficient 'mental illness' to justify the commitment of an insanity acquittee whose commitment was ending. In the *Foucha* and Crane decisions, the Supreme Court expressed concerns that Mr. Foucha and Mr. Crane, both of whom were diagnosed as having antisocial personality disorder, were, by virtue of that diagnosis, indistinguishable from most other men imprisoned in the United States. In *Foucha*, Justice White, writing for a plurality of the Court, noted that Mr. Foucha was similarly situated to other prisoners about to be released from confinement, adding, 'Many of them will likely suffer from the same sort of personality disorder that Foucha exhibits.' (p. 85).

"…*Widiger & Corbitt* (1995) reviewed five studies that reported the prevalence of antisocial personality disorder in incarcerated male populations at between 49% and 80%. Moran (1999) reported the proportion of prisoners diagnosed with antisocial personality disorder at 60%, commenting, 'Such high prevalence estimates raise important questions about the validity of the diagnosis and the medicalization of criminality.' (p. 234)." (*Zander, id.*, at 53)

*Zander, sup.* at pp. 55-56, adds:

"The body of scholarly research about the diagnosis of antisocial personality disorder is rich with data questioning its conceptual validity. *Rogers & Dion* (1991) reviewed the significant changes in the diagnostic criteria for antisocial personality disorder through DSM-III-R, pointing out that these redefinitions of the diagnosis had no empirical basis, and that the diagnosis lacked descriptive consistency and diagnostic validity.…

Page **3** of **4**

"...[A]s *Rogers & Dion* (1991) demonstrated, the expansiveness of the diagnosis is, in part, a function of the huge number of diagnostic criterion permutations possible with the antisocial personality disorder category and its linked diagnosis of conduct disorder. *Rogers, Salekin, Sewell and Cruise* (2002) commented on this problem with the diagnosis of antisocial personality disorder, noting, 'DSM-IV continues to offer a bewildering array of diagnostic possibilities with 3.2 million variations.' (p. 237).

"...The failure of the diagnosis of antisocial personality disorder to definitively distinguish between unlawful behaviors that are contextually adaptive from those that are not has been questioned by *Cunningham and Reidy* (1998) : '...[I]f a behavior patter represents a widespread social phenomenon, i.e., criminality, is it appropriate to diagnose the individual expression of these traits as a personality disorder?'"

Last, at p. 62, *Zander* points up the unreliability of the diagnostic criteria for antisocial personality disorder from one subject and rater to the next:

"In *Levenson*'s (2004b) real world analysis of interrater reliability of the SVP evaluations of 295 Florida sex offenders, she found that the reliability quotient or the diagnosis of antisocial personality disorder was 0.521 – well into the 'poor' category of interrater reliability.... The interrater reliability for the diagnosis of personality-disorder-NOS was even worse, with a kappa of 0.23. It is not known how many of the personality-disorder-NOS diagnoses in this study were made because the diagnostician felt that the examinee's history fell short of satisfying the diagnostic criteria for antisocial personality disorder."

RECEIVED
DEC 12 2022
BY MAIL

Clerk of Court

Mr. Gregory J. Linhares

December 12/5 2022

Dear Sir:

Enclosed is a Petition seeking the issuance of a
Writ of Habeas Corpus. with Exhibits (A)(B)(C). and pages (9-13)
Supplemental Grounds. Please return me a stamp
filed copy of said Petition, and Exhibits. I make
this request pursuant Article 1 Section 14, and 514.040
RSMo 1978.


Verified & Certified
pursuant to 28 USC. § 1746


phone no- 523-218-7094

date 12/5/2022.

Sincerely
Mr. Larry E. Windeknecht

Mr. Larry E. Windeknecht
1016 W. Columbia Street
Farmington, Missouri, 63640